UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| JORDAN V. JANSEN, an individual, | CASE NO. C16-0130 RSM |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| MARK A. NORCROSS, an individual, | |
| Defendant. | |

## I.   INTRODUCTION

This matter again comes before the Court on Defendant Mark Norcross's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2).[1]  Dkt. #5.  Mr. Norcross argues that this Court lacks personal jurisdiction over him because he is a non-resident that lacks sufficient minimum contacts with the State of Washington.  *Id.*  In the alternative, Mr. Norcross seeks a transfer to the Middle District of North Carolina for convenience of the parties and witnesses.  *Id.*  Plaintiff Jordan Jansen argues that he has met the minimum threshold for demonstrating specific jurisdiction over Mr. Norcross in this District.  Dkt. #7.  Mr. Jansen also opposes any transfer of this matter to another District.  Since jurisdictional discovery occurred, the parties

---

[1] The Court previously reviewed the motion and determined that jurisdictional discovery should proceed before the Court decided the motion.  Dkt. #14.

ORDER
PAGE - 1

have also submitted supplemental briefs in support and opposition to the instant motion.  Dkts. #26 and #30.  For the reasons discussed herein, the Court now GRANTS Defendant's motion.

## II. BACKGROUND

This breach of contract matter arises out of allegations of unpaid wages.  Dkt. #1, Attachment A at ¶ ¶ 3.2-6.5.  Plaintiff alleges that he is a former employee of Aggate, LLC, which was a North Carolina company founded by Defendant Norcross and Stephen Perkins. *Id.* at ¶ 3.2.  The company was formed to provide an eAuction platform to real estate clients to purchase, build, and outfit their properties.  Dkts. #6, Ex. A at ¶ 9 and #8 at ¶ 4.

Plaintiff alleges that while he was a resident of Washington, and employed by Deutsche Bank (but working in New York and Las Vegas), Mr. Norcross recruited him to become a senior executive at Aggate.  Dkts. #1, Attachment A at ¶ 3.3 and #8 at ¶ ¶ 2-5.  Plaintiff further alleges that in mid-2013, he entered into an Employment Agreement with Aggate, wherein he became President and Managing Director.  Dkt. #1, Attachment A at ¶ ¶ 3.3-3.5.  According to Plaintiff, his compensation included a salary and reimbursement for expenses.  *Id.*  Plaintiff then alleges that from September 2013 to the present, Defendant Norcross failed to timely pay his salary or reimburse expenses.  *Id.* at ¶ 3.7.

On or about December 15, 2015, Plaintiff filed the instant lawsuit in King County Superior Court, alleging breach of contract, failure to pay wages and wrongful withholding of wages under RCW 49.48, *et seq.* and RCW 49.52, *et seq.*, and unjust enrichment.  Dkt. #1, Attachment A.  On January 28, 2016, Defendant removed the action to this Court.  Dkt. #1.  Defendant then filed the instant motion to dismiss alleging lack of personal jurisdiction.  Dkt. #5.

### III.    DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) governs the dismissal of an action based on lack of personal jurisdiction.  Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004).  A plaintiff cannot simply rest on the bare allegations of his Complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.  *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977).  Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts.  *Schwarzenegger,* at 800.  Uncontroverted factual allegations must be taken as true.  Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.  *Id.*  A *prima facie* showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002).  Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits.  *Byron Nelson Co. v. Orchard Management Corp.* 95 Wn.App. 462, 465, 975 P.2d 555 (1999).  Because Washington's long-arm jurisdictional

statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger,* at 800-01.

The Due Process Clause protects a defendant's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002). General jurisdiction exists over a non-resident defendant when there is "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger,* at 801. In the absence of general jurisdiction, the court may still exercise specific jurisdiction over a non-resident defendant. To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's Washington-related activities; and (3) the exercise of jurisdiction would be reasonable. *Easter v. American West Financial,* 381 F.3d 948, 960-61 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

**B. General Jurisdiction**

A defendant is subject to general jurisdiction only where the defendant's contacts with a forum are "substantial" or "continuous and systematic." *Bancroft & Masters, Inc. v. Augusta*

ORDER
PAGE - 4

*Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). In this case, Plaintiff does not allege general jurisdiction over Defendant. Dkt. #7 at 9.

## C. Specific Jurisdiction

The Court thus turns to Plaintiff's specific jurisdiction arguments. As noted above, in the Ninth Circuit, specific jurisdiction is analyzed using a three-part test: First, the nonresident defendant must have purposefully directed his activities or consummated some transaction with the forum or a forum resident, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; second, the claim must be one which arises out of or relates to the nonresident defendant's forum-related activities; and third, the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. If the plaintiff is successful at establishing the first two prongs, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.

The first prong of the test is analyzed under either a "purposeful availment" standard or a "purposeful direction" standard, which are two distinct concepts. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Generally for claims sounding in contract, courts apply a "purposeful availment" analysis, asking whether the defendant has "purposefully avail[ed]" itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802.

*1. Purposeful Availment*

The Ninth Circuit Court of Appeals explained in *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988):

> The purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the

ORDER
PAGE - 5

> actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business with the forum state.

The Ninth Circuit further held that contract negotiations within the forum state satisfy the purposeful availment prong of the specific jurisdiction analysis where the defendant's negotiations "allow[] or promote[] the transaction of business within the forum state." *Sinatra*, 854 F.2d at 1195. Further, contracting parties who "reach out beyond one state to create continuing relationships and obligations with citizens of another state" may be found to have "purposefully availed" themselves of benefits and protections under the other state's laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L. Ed. 2d 528 (1985).

Plaintiff first argues that this Court has jurisdiction over Defendant Norcross because his contract was formed while he was in Seattle, WA. Dkt. #30 at 5 and 8. "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). However, "[a] contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction." *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990); *see also Burger King Corp.*, 471 U.S. at 478. A court "must look to prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine if the defendant's contacts are substantial and not merely random, fortuitous, or attenuated." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (internal quotation marks omitted).

///

///

ORDER
PAGE - 6

a. Prior Negotiations

To support his personal jurisdiction argument, Plaintiff contends that much of the negotiation for his employment occurred within Washington State. Dkt. #30 at 4-5. He states that between December 21, 2012, and January 7, 2013, Stephen Perkins and Defendant Norcross encouraged him to work for Aggate, and he received an offer of employment during that time. He acknowledges that Mr. Perkins drafted the employment offer, but asserts that Mr. Norcross edited the document and encouraged him to sign it. *Id.* Plaintiff then apparently signed the employment offer in Seattle. DKt. #31 at ¶ 8 and Exhibit E thereto. This evidence fails to establish sufficient evidence that Defendant Norcross purposefully availed himself of the privilege of conducting activity in Washington. Plaintiff acknowledges that his in-person discussions about employment at Aggate were with Mr. Perkins, Scott Jeffrey and Brooks Pickering, and that Defendant Norcross was not present. Dkt. #29, Ex. C at 66:21-67:3. Those discussions took place at a restaurant in Manhattan. Further, the Ninth Circuit Court of Appeals has noted that, "ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (internal quotation marks omitted). Thus, based on the evidence before this Court, the prior negotiations between the parties do not support a conclusion that Defendant Norcross purposefully availed himself of the benefits of doing business in Washington.

b. Course of Dealings Between the Parties

Plaintiff next contends that: 1) Defendant Norcross knew that he (Plaintiff) lived and worked in Washington; 2) Defendant Norcross knew that he (Plaintiff) was pitching potential clients in Washington; 3) Defendant Norcross frequently contacted him (Plaintiff) in

ORDER
PAGE - 7

Washington; and 4) others in the company knew he (Plaintiff) was located in Washington. Dkt. #30 at 5-14.  However, Defendant offers evidence that the work activities of Plaintiff were unilateral.  Defendant offers evidence that the presentations made by Plaintiff to four companies in Washington were made through contacts that were relatives of Plaintiff, and none of those presentations resulted in revenue-generating business for Aggate. Dkt. #29, Ex. C at 52:10-56:15.  There is no evidence that these presentations were made at the direction of Defendant Norcross.  "It is well settled that [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (internal quotation marks omitted) ("[A]ppellants' statement that they 'performed 90% of [their] activities in the Bay Area,' even if accurate, describes only unilateral activity.  Again, such activity fails to create personal jurisdiction over [Appellee].").

In addition, Defendant has presented evidence that Plaintiff was hired to work on the East Coast.  Plaintiff acknowledges that Aggate's business was focused on New York, Washington, D.C., and other areas along the east coast of the United States. Dkt. #29, Ex. C at 28:4-24.  Plaintiff also represented on his Linked In profile that he was the Managing Director of Aggate located in the greater New York City area." Dkt. #29, Ex. D.   Plaintiff's business cards reflected Aggate's address in Washington, D.C., not Washington State. Dkt. #6, Ex. A at ¶ 17 and Exhibit 1 thereto.  Further, Plaintiff was a member/owner of the company, not an employee.  He was paid as an owner, as reflected on an Internal Revenue Services form K-1. Dkt. #29, Ex. C at 69:9-22.  His primary role was overseeing Aggate's operations, which were based on the East Coast. Dkt. #26 at 5.  Thus, the course of dealings between Plaintiff and

Defendant does not show that Defendant Norcross purposefully availed himself of conducting business in Washington.

      c. <u>Contemplated Future Consequences</u>

Plaintiff also asserts that his agreement with Aggate contemplated a future office in Seattle, as reflected on budgets anticipating future growth. Dkt. #30 at 8-10. In addition, Plaintiff presents a December 2012 "Master List, Action Items," that contains the line item "Determine final office HQ . . . High Point? DC? NOVA? Seattle?" Dkt. #31, Ex. H. Given that no actual clients or office ever materialized in Seattle, the Court is not persuaded that the contemplated future actions reflected in these documents support Defendant's purposeful availment of contact with Washington.

Accordingly, in light of all the evidence now before it, the Court concludes that Plaintiff has failed to meet his burden of making a *prima facie* showing that Defendant purposefully availed himself of conducting activity in Washington.

    *2. Forum-Related Activities and Notions of Fair Play*

Because Plaintiff failed to establish purposeful availment, "the jurisdictional inquiry ends and the case must be dismissed." *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1155 (9th Cir. 2006) ("[Plaintiff's] arguments fail under the first prong. Accordingly, we need not address [the remaining two prongs].").

### IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion

//

ORDER
PAGE - 9

to Dismiss (Dkt. #5) is GRANTED and this matter is now CLOSED.

DATED this 23rd day of June 2016.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10